IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

PAPER, ALLIED-INDUSTRIAL,           )
CHEMICAL AND ENERGY                 )
WORKERS INTERNATIONAL               )
UNION ("PACE"), PACE LOCAL          )
5-857, THE PONCA TRIBE              )
("TRIBE"), WALLIS SCHATZ,           )
ALGEAN L. VANCE, JOHN               )
L. HOUGH, FRANCIS COLE              )
AND JEFF LIEB,                      )
                                    )
                Plaintiffs,         )
                                    )
-vs-                                )     Case No. CIV-04-438-F
                                    )
CONTINENTAL CARBON                  )
COMPANY,                            )
                                    )
                Defendant.          )

**O R D E R**

Before the court is defendant, Continental Carbon Company's Motion to Dismiss Plaintiffs' First Amended Original Complaint, filed December 22, 2004 (docket entry no. 43).  Plaintiffs have responded to the motion, and defendant has thereto replied.  Upon due consideration of the parties' submissions, the court makes its determination.

Background

This is a citizen suit brought under the federal Clean Air Act ("CAA"), 42 U.S.C. §7401, *et seq*.  In the First Amended Original Complaint, plaintiffs allege that defendant, Continental Carbon Company ("Continental Carbon"), has violated and

continues to violate the CAA through the improper and unauthorized operation of its carbon black manufacturing facility in Kay County, Oklahoma. Plaintiffs specifically allege 805 claims in their amended complaint. Plaintiffs seek injunctive relief, the imposition of civil penalties, and the award of costs.

In its motion, Continental Carbon seeks to dismiss the amended complaint on the following grounds: (1) plaintiffs' pre-suit notice letter failed to provide sufficient notice of all of the claims plaintiffs intended to pursue; (2) several categories of plaintiffs' claims are unenforceable in a citizen suit; (3) several of plaintiffs' claims involve violations that allegedly occurred in the past but have not been repeated; (4) several of plaintiffs' claims are barred by the applicable five-year statute of limitations; (5) plaintiffs' claims do not contain material facts sufficient to state any claim for relief; and (6) plaintiff, Ponca Tribe, is not authorized to bring a citizen suit under the CAA.

Standard of Review

Continental Carbon has moved to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). It appears from Continental Carbon's motion that dismissal of the amended complaint is sought under Rule 12(b)(1) as to grounds 1, 2 and 3 and under Rule 12(b)(6) as to grounds 4 and 5. It also appears that dismissal of the claims asserted by the Ponca Tribe is sought under both Rule 12(b)(1) and Rule 12(b)(6).

Rule 12(b)(1) motions typically take two forms: a facial challenge or a factual challenge. Holt v. United States, 46 F.3d 1000, 1002 (10th Cir. 1995). A facial challenge is an attack on jurisdiction that questions the sufficiency of the complaint. *Id*. In reviewing a facial attack on a complaint, the court must accept the allegations in the complaint as true. A factual attack on subject matter jurisdiction challenges the

facts upon which subject matter jurisdiction depends. *Id.* In reviewing a factual attack on subject matter jurisdiction, a court may not presume the truthfulness of the complaint's factual allegations but must go beyond the allegations and evaluate the evidence presented by the parties. *Id.* While the court may refer to evidence extraneous to the complaint in making appropriate factual findings on jurisdictional issues, it generally cannot convert a Rule 12(b)(1) motion into one for summary judgment under Rule 56, Fed. R. Civ. P. Wheeler v. Hurdman, 825 F.2d 257, 259 (10th Cir.), *cert. denied*, 484 U.S. 986 (1987).

A court, however, is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when "resolution of the jurisdictional question is intertwined with the merits of the case." Holt, 46 F.3d at 1003; Wheeler, 825 F.2d at 259, n. 5. Subject matter jurisdiction and the merits are considered to be intertwined if subject matter jurisdiction is dependent upon the same statute which provides the substantive claim in the case. Holt, 46 F.3d at 1003. However, under Wheeler, the focus of the inquiry is not merely on whether the merits and the jurisdictional issue arise under the same statute. Instead, the underlying issue is whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim. Sizova v. Nat. Institute of Standards & Technology, 282 F.3d 1320, 1324 (10th Cir. 2002); Pringle v. United States, 208 F.3d 1220, 1223 (10th Cir. 2000).

The court concludes that the facts relevant to a determination of subject matter jurisdiction in regard to pre-suit notice do not go directly to the merits of the CAA claims. A determination of the adequacy of the pre-suit notice is not an element of the CAA claims. The court shall therefore analyze the motion in regard to ground 1 under Rule 12(b)(1), bearing in mind that the party invoking federal jurisdiction bears the

burden of establishing its existence.  <u>Steel Co. v. Citizens for a Better Environment</u>, 523 U.S. 83, 104 (1998).

As to grounds 2 and 3, it appears to the court the jurisdictional issue is an aspect of the substantive claim.  However, Continental Carbon has not relied on materials outside the pleadings for dismissal of the amended complaint on these grounds.  The court shall therefore analyze the motion in regard to these grounds, similar to grounds 4 and 5, under Rule 12(b)(6).[1]

A motion to dismiss under Rule 12(b)(6) is appropriate when plaintiff can prove no set of facts in support of the claims that would entitle plaintiff to relief.  <u>Roman v. Cessna Aircraft Co.</u>, 55 F.3d 542, 543 (10th Cir. 1995).  "'The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.'"  <u>Sutton v. Utah State School for Deaf and Blind</u>, 173 F.3d 1226, 1236 (10th Cir.1999)(quoting <u>Miller v. Glanz</u>, 948 F.2d 1562, 1565 (10th Cir. 1991)).  Furthermore, all well-pleaded factual allegations in the complaint are accepted as true and viewed in the light most favorable to the nonmoving party.  <u>Robbins v. Wilkie</u>, 300 F.3d 1208, 1210-1211 (10th Cir. 2002).

<u>Ponca Tribe</u>

Continental Carbon's motion is moot to the extent it seeks to dismiss the claims of the Ponca Tribe on the basis that the Ponca Tribe is not authorized to bring a citizen suit under the CAA.  During the pendency of defendant's motion, the parties filed a Stipulation of Dismissal, which dismisses without prejudice the claims of the Ponca

---

[1]The court need not determine whether Continental Carbon's motion challenging whether plaintiff, Ponca Tribe, is authorized to bring a citizen suit under the CAA should be analyzed under Rule 12(b)(1) or Rule 12(b)(6).  This issue is now moot by the dismissal of the tribe's claims as hereinafter discussed.

Tribe as well as the individual plaintiffs. *See,* Stipulation of Dismissal, filed April 7, 2005 (docket entry no. 52). The only remaining plaintiff in this action is Paper, Allied-Industrial, Chemical and Energy Workers International Union ("PACE"). The court therefore finds it unnecessary to address Continental Carbon's motion in regard to the claims of the Ponca Tribe. The court will address the motion of Continental Carbon as to the only remaining plaintiff, PACE.

Pre-Suit Notice

Section 304(a)(1) of the CAA authorizes a citizen suit against any person who "is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of (A) an emission standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation." 42 U.S.C. §7604(a)(1). Section 304(b)(1)(A), however, provides that no action may be commenced under section 304(a)(1) "prior to 60 days after the plaintiff has given notice of the violation (i) to the Administrator, (ii) to the State in which the violation occurs, and (iii) to any alleged violator of the standard, limitation or order. . . ." 42 U.S.C. §7604(b)(1)(A). Pre-suit notice must be given in the manner that the Administrator of the Environmental Protection Agency ("EPA") prescribes by regulation. The pertinent regulation provides as follows:

> Notices to the Administrator, States, and alleged violators regarding violation of an emission standard or limitation . . . shall include sufficient information to permit the recipient to identify the specific standard, limitation, or order which has allegedly been violated, the activity alleged to be in violation, the person or persons responsible for the alleged violation, the date or dates of such violation, and the full name and address of the person giving notice.

40 C.F.R. §54.3(b). Compliance with the statutory notice requirements is a mandatory prerequisite to maintaining suit under the CAA. Hallstrom v. Tillamook County, 493

U.S. 20, 31 (1989) (interpreting analogous notice requirements in the Resource Conservation and Recovery Act). The comparable notice requirements of the Resource Conservation and Recovery Act, the Supreme Court has said, serve two functions: to "allow [ ] Government agencies to take responsibility for enforcing environmental regulations" and to give the alleged violator "an opportunity to bring itself into complete compliance." Hallstrom, 493 U.S. at 28.

PACE sent a letter dated February 3, 2004 to federal authorities, state authorities, and Continental Carbon requesting an investigation by the EPA and the Oklahoma Department of Environmental Quality ("DEQ") of alleged violations of the CAA by Continental Carbon and giving notice of its intention to sue under the CAA. The letter, attached to Continental Carbon's motion as exhibit 4, is 17 pages long. Attached to the letter is a 34-page appendix entitled "Summary Of Alleged Violations Of The Ponca City, Oklahoma Facility of Continental Carbon Co. (CCC) For the Period 11-15-98 to 11-15-03." The appendix lists 182 events and the dates of those events. In its motion, Continental Carbon does not challenge PACE's pre-suit notice letter in regard to timing, *i.e.,* whether notice of violations was given 60 days prior to the filing of this action. Rather, it contends that the content of the pre-suit notice was deficient in that the 17-page letter neither identifies "the activity alleged to be in violation" of the CAA nor "the date or dates of such violation," and the attached 34-page appendix, while listing events with a date or dates of the alleged violation, is devoid of "the specific standard, limitation, or order which has allegedly been violated." 40 C.F.R. §54.3(b). Continental Carbon contends that the listed events in the appendix cannot cure the lack of information in the letter because nothing in the body of the letter explains how the items listed in the appendix relate to or are intended to support the allegations of violations in the letter. According to

6

Continental Carbon, the lack of any link between the body of the letter and the appendix renders the entire notice deficient.  Continental Carbon contends that the pre-suit notice is incoherent and that its unintelligible presentation neither comported with EPA's regulation nor allowed Continental Carbon an opportunity to bring itself back into compliance.  It therefore contends that the majority of PACE's claims in the amended complaint must be dismissed for failure to comply with the mandatory notice requirements.

Although Continental Carbon seeks to dismiss the majority of claims in the amended complaint based upon a deficient pre-suit notice letter, it appears that the only claims subject to the notice requirement are claim nos. 1-555 since those claims are based upon section 304(a)(1) of the CAA, 42 U.S.C. §7604(a)(1).  Claim nos. 556-804, alleging violation of the prevention of significant deterioration (PSD) permit, are premised upon section 304(a)(3), and claim no. 805, alleging failure to obtain a PSD permit, is likewise premised upon section 304(a)(3).  Claims under section 304(a)(3), 42 U.S.C. §7604(a)(3), are not subject to the mandatory notice requirements. *See*, 42 U.S.C. §7604(b); United Steelworkers of America v. Oregon Steel Mills, Inc., 322 F.3d 1222, 1227 (10th Cir. 2003) (CAA requires 60-day notice for citizen suit claims brought for violations of emissions standards under section 7604(a)(1), but not for permit requirement claims brought under section 7604(a)(3)).  The court therefore reviews the letter and appendix only as to claim nos. 1-555.

Claim Nos. 1-112

These claims are for alleged violations of the Oklahoma State Implementation Plan ("SIP").   The CAA establishes dual responsibilities of the states and federal government for prevention and control of air pollution.  Espinosa v. Roswell Tower, Inc., 32 F.3d 491, 492 (10th Cir. 1994).  The CAA requires the EPA to set national

ambient air quality standards ("NAAQS") for various pollutants, and allows each state to establish a state implementation plan to implement and maintain those standards. *Id*. The EPA has authority to accept or reject a proposed state implementation plan, and may establish an implementation plan for states that do not submit a plan that meets the CAA standards. *Id*. The state implementation plan has the force and effect of federal law, thereby permitting the Administrator and citizens to enforce it in federal court. *Id*. Oklahoma has an EPA-approved state implementation plan, 40 C.F.R. §§52.1920-1935, which includes requirements with which facilities such as Continental Carbon's plant must comply. In claim nos. 1-112, PACE alleges violations of the SIP due to Continental Carbon's release of air pollutants that created nuisance conditions.

The court concludes that the letter and appendix comply with the notice requirements of 40 C.F.R. §54.3(b) in regard to claim nos. 1-112. The letter at pages 3 and 4 sets forth the specific standard violated and the activity allegedly violating the standard. In addition, the letter, in footnote 1 on pages 3 and 4, refers to examples of complaints to the DEQ of alleged nuisance conditions. These complaints, and the details thereof, are set forth in the appendix attached to the letter, which includes the dates of the alleged violations. Not every complaint relied upon by PACE for its creation of nuisance condition claims in the amended complaint is listed in footnote 1. However, the court concludes that the reference to the examples of complaints in the discussion regarding violations of the SIP based upon the creation of nuisance conditions, and the use of the term "complaints" throughout that discussion, provides sufficient information to the recipient of the letter that each of the complaints to the DEQ listed in the appendix relating to "black carbon," "black stuff," "dust," and "black powder" on the complainant's property from Continental Carbon's facility, and

"horrible odor," "foul odor," "bad odor" from Continental Carbon's facility, are alleged violations of the SIP based upon the creation of nuisance conditions. Having considered Continental Carbon's arguments to the contrary, the court concludes that there is a sufficient link between the letter and appendix to show compliance with the notice requirements in regard to claim nos. 1-112.[2] The court therefore concludes that dismissal of claim nos. 1-112 for deficient pre-suit notice is not appropriate.

Claim Nos. 118-220

These claims are for violations of Oklahoma Administrative Code ("OAC") 252:100-29-2(a) and OAC 252:100-29-2(b) which are included in the SIP. According to PACE, OAC 252:100-29-2(a) as set forth in the SIP provides that:

> [n]o person shall cause or permit the handling, transporting or disposition of any substance or material which is likely to be scattered by the air or wind, or is susceptible to being air-borne, or wind-borne or to operate or maintain or cause to be operated or maintained, any premise, open area, right-of-way, storage pile of materials, vehicle, or construction, alteration, demolition or wrecking operation, or any other enterprise, which involves any material or substance likely to be scattered by the wind or air, or susceptible to being wind-borne or airborne that would be classified as air pollution without taking reasonable precautions or measures to minimize atmospheric pollution.

OAC 252:100-29-2(b), as set forth in the SIP, provides that "[n]o person shall cause or permit the discharge of any visible fugitive dust emissions beyond the property line on which the emissions originate in such a manner as to damage or to interfere with

---

[2]The court notes that several times in its motion, Continental Carbon, refers to the "body" of the letter and argues that there is a lack of any link between the "body" of the letter and the appendix. *See*, pages 12 and 13 of Continental Carbon's memorandum. The court concludes that the footnotes in the letter are also a part of the letter and are to be considered in determining whether the content of the pre-suit notice complies with section 54.3(b).

the use of adjacent properties, or cause air quality standards to be exceeded or to interfere with the maintenance of air quality standards."

In the amended complaint, PACE alleges that these claims are based upon the same information and in the same order as "Claim Nos. 1-106, except for Claim Nos. 70, 146, 147 and 181." The court is somewhat confused by the statement "except for Claim Nos. 70, 146, 147 and 181." The court, however, assumes that these references are to the numbers cited in the appendix and not claim nos. 70, 146, 147 and 181 in the amended complaint. According to the amended complaint, the event set forth in no. 70 of the appendix is the basis for claim no. 41, the event set forth in no. 146 of the appendix is the basis for claim no. 79, the event set forth in no. 147 of the appendix is the basis for claim no. 80, and the event set forth in no. 181 of the appendix is the basis for claim no. 105.

Although the letter at page 5 sets forth the specific standards violated, it does not refer to any of the complaints to the DEQ as examples of the activities allegedly violating the cited standards and the dates of the activities. However, the letter does indicate that the violations of the cited standards are related to violations of the creation of nuisance conditions. *See, e.g.*, letter stating at p. 3, "1. Creation of Nuisance Conditions, Conditions of Air Pollution and Related Violations;" letter stating at p. 4, "Additional allegations of violations from Continental Carbon's actions include . . . .;" footnote 3 of letter at p. 4, noting in discussion of nuisance conditions DEQ's citation of Continental Carbon for violation of Special Condition 14 of Federal Operating Permit "requiring all reasonable precautions to minimize emissions of fugitive dust and referring to the October 23, 2003 ODEQ request for information and notice of violation to Continental Carbon;" footnote 8 of letter at p. 5, noting that violations of OAC 252:100-29-2(a) are also violations of Special Condition 14 and

referring to the October 23, 2003 ODEQ request for information and notice of violation to Continental Carbon; letter stating at p. 8 that Specific Condition 14 requires Continental Carbon to "take all reasonable precautions to minimize emissions of fugitive dust and prevent visible fugitive dust emissions from crossing the boundary of the property on which those emissions originated;" footnote 18 at p. 8, noting earlier discussion regarding nuisance conditions in regard to violation of Specific Condition 14 and referring to the October 23, 2003 ODEQ request for information and notice of violation to Continental Carbon; and footnote 19 referring to Specific Conditions 14(b), (c) and (d) and OAC 252:100-29.  The court concludes that the letter provides sufficient information to the recipient to identify that the events which form the bases of the creation of nuisance conditions also form the bases of violations of OAC 252:100-29-2(a) and OAC 252:100-29-2(b).  The court concludes that the letter and appendix provide sufficient information for the recipient to identify the specific standards violated, the activity or activities which violate the standards and the dates of the alleged violations.   The court thus concludes that notice requirements have been complied with in regard to claim nos. 118-220 and, accordingly, that these claims are not subject to dismissal.

Claim Nos. 113-117

These claims are for violations of OAC 252:100-25-3, which is included in the SIP.  According to PACE, the language in the SIP states "[n]o person shall cause, suffer, allow or permit discharge of any fumes, aerosol, mist, gas, smoke, vapor, particulate matter, or any combination thereof of a shade or density greater than twenty (20) percent equivalent opacity."

Although violations of OAC 252:100-25-3 are also mentioned with violations of OAC 252:100-29-2(a) and OAC 252:100-29-2(b) and appear from the letter to be

related to those violations and to the violations in regard to the creation of nuisance conditions, only two of the events (nos. 70 and 171 of the appendix) which form the bases of claim nos. 113-117 are the same as the events that form claim nos. 1-112, and only one of the events (no. 171) forms claim nos. 118-220.   Unlike the previous claims, the court cannot say that the letter and appendix complies with the notice requirements in regard to claim nos. 113-117.   Although the letter sets forth the specific standard allegedly violated (*see*, p. 4 and footnote 6 at pp. 4-5), it does not reference the activity or activities allegedly violating the standard and the dates of the alleged violations.   The letter states at page 5 that "additional allegations of violations are included in Appendix A."   But this statement does not indicate that the violations of OAC 252:100-25-3 are actually included in the appendix, nor does it indicate what those violations are.   For claim nos. 113-117, PACE does, in fact, rely upon events and dates of events listed in the appendix.   However, in the court's view, there appears to be no correlation between the events listed the appendix and the standard mentioned in the letter.   PACE has not sufficiently shown that Continental Carbon, upon review of the letter and the appendix, would correlate the events which form claim nos. 113-117, with violations of OAC 252:100-25-3 set forth in the SIP.   The events do not indicate a discharge of "any fumes, aerosol, mist, gas smoke, vapor, particulate matter, or any combination thereof of a shade or density greater than twenty (20) percent equivalent opacity."   The court concludes that dismissal of claim nos. 113-117 is therefore appropriate.

Claim Nos. 221-284

These claims are for violation of Continental Carbon's federal operating permit ("FOP").   Title V of the CAA requires those who operate major stationary sources of air pollution, such as Continental Carbon, to obtain operating permits and establishes

the procedure for federal authorization of state-run programs.  *See*, Ohio Public Interest Research Group, Inc. v. Whitman, 386 F.3d 792, 794 (6th Cir. 2004); 42 U.S.C. §§7661a(a), 7661c(a); 40 C.F.R. §§70.3, 70.6(a)(1).  Title V does not impose new obligations.  Rather, it consolidates pre-existing requirements into a single, comprehensive document for each source, which requires monitoring, record-keeping, and reporting of the source's compliance with the CAA. *See*, *id*., 42 U.S.C. §§7661c(a), (c); 40 C.F.R. §§70.6(a)(3), (c)(1).  Sources subject to Title V may not operate without, or in violation of, an operating permit.  *Id*.; 42 U.S.C. §7661a(a).

The Act directs the EPA to promulgate regulations establishing minimum elements of a Title V program.  *Id.*; 42 U.S.C. §7661a(b).  The EPA's Title V regulations are codified at 40 C.F.R. Part 70.  Each state is required to develop, and submit for EPA approval, an operating permit program that meets the requirements of Title V and Part 70.  *Id*.; 42 U.S.C. §7661a(d)(1).  The EPA has granted final full approval to Oklahoma's Title V program. Oklahoma's Title V operating permit program regulations are located at OAC §252:100-8-1, *et seq*.  Continental Carbon has received a Title V operating permit from the DEQ.  The permit is hereinafter referred to as the FOP.

In the amended complaint, PACE alleges that Continental Carbon has claimed that many of its emissions which exceed the emission limits in its FOP were the result of upsets, emergencies or malfunctions.  PACE, however, alleges that these exceedances were actually the result of poor maintenance and other preventable circumstances.  PACE alleges that such exceedances are violations of Specific Condition No. 1 of the FOP.

The court concludes that the letter and appendix comply with the notice requirements for claim nos. 221-284.  The letter provides sufficient information on

page 13 as to the specific condition violated and provides sufficient information as to the activity violating the condition and the time frame of the violations.  The appendix also sets forth the excess emissions and the specific dates of the emissions which form the bases of claim nos. 221-284.  The court also notes that the letter specifically states that the "violations are identified in this letter, and others are included in Appendix A."  The court concludes that the information provided in the letter and the appendix satisfies the notice requirements.  Dismissal of claim nos. 221-284 is therefore not appropriate.

Claim Nos. 285-291

These claims are for alleged violations of the FOP for failure to make any report for certain excess emissions.  The court concludes that the letter satisfies the notice requirements for these claims.  Pages 11 and 12 of the letter set forth the standard conditions for timely and sufficiently detailed reporting which were allegedly violated.  Page 12 sets forth the allegation that "excess emissions occurred without proper reporting on at least seven occasions between May and September 2003."  Footnote 30 on page 12 of the letter gives the specific dates of the alleged emission events.  In the court's view, this information clearly complies with the notice requirements.  Dismissal of claims 285-291 is not appropriate.

Claim No. 292

This claim is also for unreported emission events in violation of the FOP.  The standard conditions allegedly violated are provided on pages 11and 12 of the letter.  The letter sets forth the situations resulting in the emission events.  The dates for the events are set forth in footnote 31 on page 12.  The court concludes that the notice requirements have been complied with for this claim.  The court concludes that dismissal of claim no. 292 is not appropriate.

Claim No. 293

This claim is for continuing reporting violations, for each failure to report, which plaintiffs may prove on the basis of documents obtained through discovery, for the entire five-year period for which penalties are sought. The court concludes that the letter does not comply with the notice requirements in regard to this claim. Although the letter sets forth the standard conditions violated and the activity allegedly violating the standards, there is no indication in the letter as to a time frame of these violations. PACE refers to the time frame in the amended complaint as the five-year time period for which penalties are sought. However, there is no indication at page 12 of the letter, which discusses additional violations for failure to report, as to the time frame in which PACE believes that the violations occurred and no indication that the violations are in fact continuing. The letter indicates only that there may be additional violations. There is a statement on page 9 that Continental Carbon continues to violate reporting requirements of the FOP, but there is no reference to continuing violations on page 12. The court concludes that dismissal of this claim is warranted.

Claim Nos. 294-307

These claims are for failure to make timely reports for malfunctions and excess emissions. The letter complies with the notice requirements for these claims. The standard conditions purportedly violated are set forth on page 11 of the letter. Page 11 of the letter sets forth PACE's allegation that "the DEQ Log Book reveals multiple violations of the company's failure to report, no later than the next working day, malfunction and excess emissions." Footnote 29 sets forth the dates of the malfunctions and excess emissions. The court concludes that the information

provided complies with the notice requirements and dismissal of claim nos. 294-307 is not appropriate.

Claim No. 308

This claim is for continuing violations and additional violations relating to failure to make timely reports of excess emissions.  The court, however, concludes that the letter does not comply with the notice requirements in regard to this claim. There is no indication, in the discussion of the requirement of timely reports on page 11 of the letter, that there are continuing violations or additional violations.  The court notes that, at page 9, there is a general statement that Continental Carbon continues to violate the reporting requirements of the FOP, including failure to make timely reports.  However, there is no indication at page 11 of any continuing violations with respect to reporting.  And there is no indication of any time frame for the violations. The court concludes that dismissal of this claim is therefore appropriate.

Claim No. 309

This claim is for failure to provide sufficient detail in reports.  The standard condition for this violation is stated on page 12 of the letter.  Although the letter does not provide specific dates for the insufficient reports (regarding the magnitude of the release and the corrective actions taken), it refers to the June 5, 2003 memorandum of the DEQ which refers to the reports.  The court concludes that the letter provides sufficient information to comply with the notice requirements and that dismissal of this claim is not appropriate.

Claim No. 310

This claim involves the failure to report to the Air Quality Division ("AQD") the results of required monitoring at 6-month intervals.  The letter sets forth the standard condition allegedly violated by defendant on page 16 of the letter.  Although

the dates of the violations are not stated in the letter, it does refer to the June 5, 2003 Full Compliance Evaluation which identified the violation. The information in regard to time frame as to the failure to submit semiannual reports would be available in that evaluation. The court concludes that the information provided is sufficient to comply with the notice requirements and that dismissal of this claim is not appropriate.

Claim No. 311

This claim involves the violation of reporting requirements set forth in Standard Condition, Section XIV.A. In footnote 25 on page 9, the letter specifies the standard condition that was allegedly violated. The letter also provides the time frame (in November 2002) when the events occurred. The court concludes that the notice requirements are met for this claim and that dismissal of this claim is not appropriate.

Claim No. 312

This claims involves the alleged violation of Standard Condition XIX (A)(8). The court concludes that the letter, however, does not comply with the notice requirements in regard to this claim. Although the letter at page 16 sets forth the standard condition allegedly violated and the activity allegedly violating the condition, there is no indication of the date or dates of the violation or of any time frame for the violation. The letter states that "Employee records document these violations." However, there is no indication that defendant, the EPA or the DEQ had access to this information. The amended complaint states that the employee records document these violations at least through April 2001. The court, however, concludes that compliance with the notice requirements required inclusion of this time frame in the letter. This claim therefore is subject to dismissal.

Claim No. 313

This claim involves the alleged violation of Specific Condition No. 4 of the FOP.  The court concludes that the notice requirements have not been complied with as to this claim.  Although the letter, at page 14, sets forth the terms of Specific Condition No. 4 and the activity allegedly violating this specific condition, no date or dates are given for the alleged violation or violations.  Indeed, plaintiffs admitted as much in the letter by stating that they "cannot verify exact dates of the violations, but want to provide notice that they intend to pursue" matters further.  In the amended complaint, plaintiffs specifically aver that "[d]ocumentation of the frequency and dates of such illegal actions will have to be obtained in discovery."  Because no date or time frame in regard to the violations is provided in the letter, the court concludes that the claim is subject to dismissal for failure to satisfy the notice requirements.

Claim No. 314

This claim involves violations of Specific Condition No. 5 of the FOP.  Page 14 of the letter sets forth the terms of the specific condition and the activity that allegedly violated the specific condition.  The letter, however, again does not provide any dates or time frame for the alleged violations.  The amended complaint avers that the "claim involves multiple violations, the dates of which will have to be determined through discovery."  Without the dates or even a time frame for the alleged violations, the court concludes that the letter does not comply with the notice requirements.  This claim therefore is subject to dismissal.

Claim Nos. 315-378

These claims allege violations of Specific Condition No. 10, which requires all off gases from the reactor are to be oxidized.  Plaintiffs allege in the amended complaint that these claims are based upon Claim Nos. 225-288, respectively.  It

appears that reliance on Claim Nos. 225-288 is in error as those claims relate to reporting violations and not to emissions. It appears to the court that PACE actually intends to rely on Claim Nos. 221-284 as the bases for claim nos. 315-378. As to claim nos. 315-378, the court concludes that letter complies with the notice requirements as page 10 sets forth the specific condition violated. There are notices of plant emissions listed, with dates, in footnote 26 on page 10 of the letter, and there is also a reference to the appendix for greater detail. The court thus concludes that dismissal of claim nos. 315-378 is not appropriate.

Claim Nos. 379-380

These claims are also for violation of Specific Condition No. 10 based upon leaks from waste gas fans. According to PACE, uncombusted off-gases are regularly released from the waste gas fan housing. PACE also alleges that off-gases are released due to leaks in the fireboxes.

The court concludes that the letter does not comply with the notice requirements for this claim. The specific condition is set forth on page 10 of the letter, and the activity allegedly violating the condition is set forth on page 11. However, the letter provides no date or dates of the alleged violations. Moreover, it does not provide any time frame for the violations. The letter only states that uncombusted off-gases are "regularly" released from the waste gas housing. In addition, it states that "[e]mployee records document these violations." The court therefore concludes that dismissal of claim nos. 379-380 is appropriate.

Claim Nos. 381-416

These claims are for violation of Specific Condition No. 11 of the FOP requiring waste gas combustors and thermal oxidizers to be operated at a temperature of at least 1500° F. PACE alleges in the amended complaint that Continental Carbon

violated this condition 34 times between March 1, 2003 and May 31, 2003. The court concludes that the letter complies with the notice requirements in regard to these claims. The specific condition is set forth in the letter, and the letter, at page 9, states that the specific condition was violated 34 times between March 1, 2003 and May 31, 2003. Footnote 24 on page 9 of the letter also references the DEQ's October 23, 2003 notice of violation to Continental Carbon. The letter also states at page 15 that Continental Carbon continues to violate Special Condition No. 11 and sets forth the activity which violates the special condition. The court concludes that dismissal of claim nos. 381-416 is not appropriate.

Claim No. 417

This claim is for violation of Special Condition No. 11(e) requiring that thermal oxidizers and waste gas combustors be operated in conjunction with reactors while the reactors are producing carbon black. The court concludes that the letter does comply with the notice requirements as to this claim. The specific condition violated – as well as the violative activity – is identified on page 10 of the letter. The letter also provides a time frame for the violations. The court concludes that dismissal of claim no. 417 is not appropriate.

Claim No. 418

This claim is for violation of Special Condition No. 12 which provides that "the permittee shall conduct . . . a visual observation of emissions, in accordance with 40 CFR Part 60, Appendix A, Method 9." The letter complies with the notice requirements as to this claim. The special condition is set forth at page 15 of the letter, and the letter specifies the activity violating the condition as well as the dates of such violations. The court concludes that dismissal of claim no. 418 is not appropriate.

Claim Nos. 419-525

These claims are for alleged violations of Special Condition No. 14 of the FOP which requires Continental Carbon to "take all reasonable precautions to minimize emissions of fugitive dust and prevent visible fugitive dust emissions from crossing the boundary of the property on which those emissions originated." In the amended complaint, PACE alleges that these claims are also based on claim nos. 1-106. The court finds that the letter and appendix comply with the notice requirements for these claims. The letter specifically sets forth at page 8 the specific condition violated by Continental Carbon. It also provides a time frame for the violations. It further references in footnote 18 on page 8 to the discussion regarding nuisance conditions and the October 23, 2003 notice of violation by the DEQ. For these reasons and the reasons set forth in the previous discussion of claim nos. 1-112 and 118-220, the court finds that the letter and appendix comply with the notice requirements for claim nos. 419-525.

Claim No. 526

This claim is also for violation of Specific Condition No. 14. In the amended complaint, PACE alleges that Continental Carbon has violated the condition by shutting off the clean-up bag filter when loading and/or forcing employees to load with inadequate suction, caused by reduced pressure from increased production. According to PACE, this results in the release of carbon black into the air. PACE also alleges that during inspections the company stops all loading and shipping operations because of the releases. According to PACE, the entire shipping department has been shut down during agency inspections.

Although the letter at page 15 provides the specific condition violated and the activity allegedly violating the condition, the letter does not provide any date or dates

of the violations.  The letter alleges only that it is the regular practice of Continental Carbon to stop all loading and shipping during agency inspections.  No time frame or range of dates is provided as to such violations.  The court concludes that the letter does not comply with the notice requirements, and therefore claim no. 526 must be dismissed.

Claim No. 527

This claim is for violation of Specific Condition No. 14 based upon the DEQ's notice of violation of October 23, 2003.  The notice of violation (which identifies specific condition 14 as a violation) is set forth in the appendix at number 4 on page 2 and is referenced in footnote 18 on page 8 of the letter.  The court concludes that the letter and appendix comply with the notice requirements and that dismissal of claim no. 527 is not appropriate.

Claim No. 528

This claim is for violation of special condition 17 requiring performance testing "within 180 days of completion of construction of the thermal oxidizers and the manufacturing systems."  The court concludes that the letter at page 16 complies with the notice requirements and that dismissal of this claim is not appropriate.

Claim Nos. 529-551

These claims are for violation of Specific Condition No. 18(a) and 40 C.F.R. §64.7(d).  The court concludes that the letter complies with the notice requirements for these claims.  The specific condition is identified at page 14, and the events and dates are identified in footnote 34 of page 14.  The court therefore concludes that dismissal of claim nos. 529-551 is not appropriate.

Claim No. 552

This claim is also for violation of Specific Condition No. 18.  The court concludes that this claim complies with the notice requirements.  The specific condition violated is identified as well as the event and date of the violation.  The court concludes that dismissal of claim no. 552 is not appropriate.

Claim No. 553

This claim is for violation of Specific Condition No. 18(b) requiring the development and implementation of a quality improvement plan. The court concludes that the letter complies with the notice requirements in regard to the claim.  The letter identifies the specific condition at page 16 and provides sufficient information identifying the activity and time frame on pages 9 and 16.  The court concludes that dismissal of claim no. 553 is not appropriate.

Claim No. 554

This claim is for violation of Specific Condition No. 19 and Standard Condition IV, which require annual compliance certifications. The court concludes that the letter complies with the notice requirements for this claim.  The specific condition and standard condition allegedly violated is identified on page 13 of the letter and the activity and date of violation are identified on page 13 and in footnote 32 of page 13.

Claim No. 555

This claim is also for violation of Specific Condition No. 19 and Standard Condition IV for submitting an inadequate compliance certification.  The court concludes that the letter complies with the notice requirements as to this claim.  The specific condition and standard condition are set forth on page 13 of the letter, together with the activity and date of violation.

Summary - Pre-Suit Notice

To summarize, the court finds that pre-suit notice was deficient as to the following claims: claim nos. 113-117, 293, 308, 312, 313, 314, 379-380, and 526. These claims are therefore dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

Non-Objective Standards

Continental Carbon seeks to dismiss claim nos. 1-112, 118-220, 221-284, 419-527, 529-552, and 699-802, on the ground that these claims concern requirements for which the CAA does not permit citizens to bring suit.  Specifically, Continental Carbon asserts that the requirements cited in these challenged claims are not the sort of clear, objective, quantitative standards that courts have found to be enforceable, in a citizen suit, as emission standards or limitations.  Continental Carbon contends that citizens may only bring suit under section 7604(a)(1) to enforce requirements that fall within the statutorily-defined term "emission standard or limitation."  According to Continental Carbon, this term is limited to requirements which impose specific, objective standards, compliance with which can be relatively easily assessed and measured.  Continental Carbon argues that if a subjective determination is needed to evaluate compliance with a requirement, then that requirement does not qualify as an "emission standard or limitation" enforceable in a citizen suit.  Moreover, Continental Carbon contends that a subjective requirement is not enforceable even if it is incorporated into the SIP or Continental Carbon's permits.

Continental Carbon argues that determinations of whether an air emission constitutes a "nuisance" for claim nos. 1-112; whether "reasonable precautions" have been taken to minimize atmospheric pollution for claim nos. 118-220; whether "reasonable precautions" have been taken to minimize emissions of fugitive dust and

to prevent visible fugitive dust emissions from crossing the boundary of property for claim nos. 419-527 and 699-802; whether an air emission is properly claimed an "excess emission" for claim nos. 221-284; and whether Continental Carbon's response to an exceedance was "expeditiously as practicable in accordance with good air pollution control practices for minimizing emissions" for claim nos. 529-552 all require expert judgments that Congress did not intend to be enforced in a citizen suit. Because the claims concern subjective requirements which do not qualify as emission standards or limitations, Continental Carbon contends the claims must be dismissed for lack of subject matter jurisdiction.

Section 7604(a)(1)(A) allows any person to bring a suit against an individual who violates an "emission standard or limitation" under the CAA.  The statutory definition of "emission standard or limitation" includes "any condition or requirement of a permit under part C of subchapter I of this chapter (relating to significant deterioration of air quality)" and "any other standard, limitation, or schedule established under any permit issued pursuant to subchapter V of this chapter or under any applicable State implementation plan approved by the Administrator. . . ."  42 U.S.C. §7604(f)(3) and (4).

Each of the challenged claims asserts a violation of a provision of the SIP, FOP or PSD.  In Wilder v. Thomas, 854 F.2d 605, 613-616 (2nd Cir. 1988), the Second Circuit concluded that a person may not bring a citizen suit to simply attain the NAAQS (the SIP's overall objectives) or to modify or amend the SIP to conform to a plaintiff's notion of proper environmental policy.  Rather, "a citizen suit must allege a violation of a specific strategy or commitment in the SIP."  Other courts have concluded likewise. *See*, Bayview Hunters Point Community Advocates, 366 F.3d 692, 701 (9th Cir. 2004) ("courts may only enforce specific SIP strategies, and may not

enforce a SIP's overall objectives or aspirational goals."); <u>Citizens for a Better Environment v. Deukmejian</u>, 731 F.Supp. 1448, 1454 (N.D. Cal. 1990). In addition, as Continental Carbon has pointed out in its briefing, two district court cases have rejected jurisdiction over a citizen suit based upon permit provisions which merely restate the state's common law of nuisance. These courts specifically concluded that nuisance law was non-objective and thus unenforceable in a citizen suit. <u>Helter v. AK Steel Corp.</u>, 1997 U.S. Dist. Lexis 9852, *50 (S.D. Ohio March 31, 1997); <u>Satterfield v. J.M. Huber Corp.</u>, 888 F. Supp. 1561, 1566 (N.D. Ga. 1994). PACE asserts that other courts have not relied on these cases. However, other district courts have, in fact, acknowledged these cases, <i>see</i>, <u>Communities for a Better Environment v. Cenco Refining Co.</u>, 180 F. Supp. 2d 1062, 1077 (C.D. Cal. 2001) (the district court cases "do require citizen suits to be based on alleged violations of specific and objective provisions of SIPs, rather than general air quality goals or subjective tests"); <u>Unitek v. Hawaiian Cement</u>, 1997 U.S. Dist. Lexis 19261, *21, *23 (D. Haw. August 7, 1997) (it may be true that citizens cannot sue for alleged violations of a non-objective standard); but allowed the enforcement of the challenged SIP provisions at issue in those cases on the ground that the challenged provisions did not contain subjective standards. <i>See also</i>, <u>L.E.A.D. (Lead Environmental Awareness Development) v. Exide Corp.</u>, 1999 WL 124473, *24 (E.D. Pa. February 19, 1999) (citing <u>Satterfield</u> for the proposition that the CAA only allows for redress based only on alleged violations of objective regulations).

The court is persuaded by the cases which have concluded that a citizen suit may not be maintained to enforce non-objective standards, even if those standards are in an SIP or permit provision. The court concludes that the Supreme Court's decision in <u>PUD No. 1 v. Washington Dep't of Ecology</u>, 511 U.S. 700 (1994), does not require

a different result.  The court concludes that claim nos. 1-112, alleging creation of a nuisance, to be subject to dismissal for lack of subject matter jurisdiction under the standards of Rule 12(b)(6).

However, the court disagrees with Continental Carbon as to the remainder of the challenged claims.  The court does not find that these claims allege violations of the SIP, FOP, and PSD provisions which contain vague, subjective standards.  The court concludes that the claims allege violations of specific and objective provisions of the SIP, FOP, and PSD.  The court finds that Specific Condition No. 14 of the FOP and Specific Condition No. 11 of the PSD permit are specific and objective measures in that they do specify the reasonable precautions to be taken to minimize emissions of fugitive dust and to prevent visible emissions from crossing the boundary of property.  OAC 252:100-29-2(a) as incorporated in the SIP is also specific in that it specifies the reasonable precautions to be taken.  Specific Condition No. 18 of the FOP is also a specific measure in that requires compliance with the Compliance Assurance Monitoring requirements.  The court concludes that 40 C.F.R. §64.7(d), referred to in Specific Condition No. 18, is also specific in that it delineates the response to be taken for exceedances as well as the corrective actions to be taken.  The court also concludes that Specific Condition No. 1 of the FOP and Specific Condition No. 7 of the PSD permit are specific measures because they specify emissions standards.  The fact that the requirements may not contain numerical standards or limitations does not make the requirements unenforceable.  *See*, Communities for a Better Environment, 180 F.Supp.2d at 1077 (citing Wilder, 854 F.2d at 615-16;other citations omitted)); *see also*, Coalition Against Columbus Center v. City of New York, 967 F.2d 764, 770-71 (2d Cir. 1992) (SIP provision committing City to implement mitigating measures, even though the exact contours of measures are not spelled out,

constitutes a specific strategy, fully enforceable in a citizen suit).  The court therefore concludes that claim nos. 118-220, 221-284, 419-527, 529-552, and 699-802 should not be dismissed for lack of subject matter jurisdiction over enforcement of non-objective standards.

Continental Carbon additionally argues that claim nos. 221-284 and 529-552 are  subject to dismissal under "the doctrine of primary jurisdiction, which provides that 'where the law vests in an administrative agency the power to decide a controversy or treat an issue, the courts will refrain from entertaining the case until the agency has fulfilled its statutory obligation.'" *See*, Continental Carbon's memorandum at page 24 (quoting  Marshall v. El Paso Natural Gas Co., 874 F.2d 1373, 1376-77 (10th Cir. 1989)).  Continental Carbon contends that the determination of whether excess emissions, which have been reported as malfunctions, are the result of careless operation or poor maintenance is committed to the discretion of the DEQ.  Because the subjective determination is committed to the DEQ's discretion, Continental Carbon contends that this court must refrain from entertaining these claims.  Again, the court disagrees.

The majority of federal cases addressing the issue have found the doctrine of primary jurisdiction to be inapplicable to suits brought under the citizen suit provisions of the CAA.  Anderson v. Farmland Industries, Inc., 45 F. Supp.2d 863, 867-868 (D. Kan. 1999); L.E.A.D., 1999 WL 124473, *21; Sierra Club v. Tri-State Generation and Transmission Ass'n , 173 F.R.D. 275, 283-284 (D. Colo. 1997). Moreover, the court finds that Continental Carbon has not sufficiently demonstrated that the factors necessary for invocation of the doctrine of primary jurisdiction are present.  Anderson, 45 F.Supp.2d at 868.  The court therefore finds that the doctrine of primary jurisdiction does not require dismissal of claim nos. 221-284 and 529-552.

28

Single Event Not Repeated

Continental Carbon contends that eight of PACE's claims (claim nos. 310, 311, 418, 552, 553, 554-55, and 803) are subject to dismissal for lack of subject matter jurisdiction because "they allege isolated incidents of wrongdoing that were not repeated." *See*, Continental Carbon's memorandum, p. 25. These claims of unrepeated wrongdoings, according to Continental Carbon, are not cognizable in a citizen suit. Continental Carbon argues that a plaintiff's allegations of past violations can be only pursued under section 7604(a)(1) if "there is evidence that the alleged violation[s] have been repeated." Moreover, Continental Carbon argues that a plaintiff may not rely on different types of past violations to sustain a claim; the alleged violation which must be "repeated" must be the same violation as the antecedent violation.

Under section 7604(a)(1), a citizen suit may be commenced against any person "who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of" an emission standard or limitation. 42 U.S.C. §7604(a)(1). The plain language of this statute therefore permits citizen suits for continuing violations and wholly past violations, so long as the past violations were repeated. As the court recognized in Fried v. Sungard Recovery Servs., Inc., 916 F. Supp. 465, 467 (E.D. Pa. 1996), the past violation need only have occurred more than once.

Upon review of the amended complaint, accepting all well-pleaded factual allegations as true, and viewing those allegations in a light most favorable to PACE, the court finds that PACE has sufficiently alleged repeated violations for claim nos. 310, 311, 418, 552, 553, and 803. *See, e.g.* claim no. 310 (Continental Carbon has not submitted semiannual monitoring "reports" as required by the permit); claim no. 311

("Such occurrences" were not reported in violation of the reporting requirements in Continental Carbon's FOP"); claim no. 418 ("Since no one at the facility was qualified to complete the Method 9 observations from April 2000 through March 26, 2003, Continental Carbon was in violation of Specific Condition No. 12, from the initial issuance of the FOP until at least March 26, 2003"); claim no. 552 (Continental Carbon should have developed and implemented a QIP "for each thermal oxidizer;" Continental Carbon "has been and continues to be in violation of Specific Condition 18 (b)"); and claim no. 803 (alleging violation of Specific Condition No. 13 and claim no. 804 alleging "multiple days of violations, if not continuing violations, of Specific Condition No. 13").  The court therefore finds that dismissal of these claims is not appropriate.  *See*, Glazer v. American Ecology Envtl. Services Corp., 894 F. Supp. 1029, 1038, n. 3 (E.D. Tex. 1995) (complaint sufficiently alleged repeated violations and jurisdiction is proper).

The court, however, finds that PACE has not alleged repeated violations for claim nos. 554 and 555.  These claims do not allege that the violations were repeated.  The allegations appear to relate only to the 2002-2003 Annual Compliance Certification.  Moreover, PACE has not alleged and has not presented any evidence or argument as to these specific claims to show that they have been repeated.  The court therefore concludes that claim nos. 554 and 555 should be dismissed for lack of jurisdiction under Rule 12(b)(6).

Failure to State a Claim

Continental Carbon contends that the following claims should be dismissed under Rule 12(b)(6) for failure to state a claim for relief:  claim nos. 1-117, 220-308, 311, 419-526, 528, 553, 675, 699-802, and 804-805.  The court need not address dismissal of claim nos. 1-117 and 526 for failure to state a claim for relief as the court

has previously dismissed these claims on other grounds.  The court will therefore only address the sufficiency of claim nos. 220-308, 311, 419-525, 528, 553, 675, 699-802, and 804-805 under the standards of Rule 12(b)(6).

Rule 12(b)(6), Fed. R. Civ. P., provides that a defendant may assert by motion to dismiss that a plaintiff's complaint fails to state a claim upon which relief can be granted.  The rule thus provides a procedural device to test the formal sufficiency of the statement of a claim for relief by requiring the district court to appraise a complaint.  This court is so guided in its appraisal by the language in <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957), which provides that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

This court is also guided in its determination by Rule 8(a), Fed. R. Civ. P.  Rule 8(a) sets forth the requirements for pleading a claim and requires that the pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  It is only when the challenged pleading fails to meet these liberal standards and thus also fails to give notice to the opposing party of the nature of and the grounds for the claim presented that the pleading will be subject to dismissal under Rule 12(b)(6).

In its determination, the court is further guided by the Supreme Court's statement that the court "must presume that the general allegations in the complaint encompass specific facts necessary to support those allegations" at the pleading stage, <u>Steel Co. v. Citizens for a Better Environment</u>, 523 U.S. 83, 104 (1998).

The court accepts all well-pleaded factual allegations in the complaint and construes them in favor of the non-moving party.  <u>Duran v. Carris</u>, 238 F.3d 1268, 1270 (10th Cir. 2001).

Applying these standards, the court finds that PACE has stated a claim for relief against Continental Carbon in claim nos. 220-308, 311, 419-525, 528, 553, 675, 699-802, and 804-805.   Although the court recognizes that PACE has not set forth every specific detail of the claims, the court finds that Continental Carbon has adequately been apprised of the nature of the claims and the relief sought for those claims.   The discovery process provides ample tools with which to flesh out these claims.

Statute of Limitations

Continental Carbon contends that the following claims should be dismissed as time-barred by the applicable five-year statute of limitations, 28 U.S.C. §2462:  claim nos. 82-105, 111, 117, 200–223, 275-284, 369-378, 501-524, 547-551, 781-800, and 805.  The court need not address dismissal of claim nos. 82-105, 111, and 117 as time-barred since the court has previously dismissed these claims on other grounds.  The court will therefore address the statute of limitations challenge only as to claim nos. 200-223, 275-284, 369-378, 501-524, 547-551, 781-800, and 805.

Continental Carbon contends that the court may consider only PACE's claims which have accrued less than five years before April 7, 2004, the date on which the original complaint was filed.  Because all the challenged claims accrued before April 7, 1999, Continental Carbon contends that the claims must be dismissed as time-barred.

PACE responds that it has clearly indicated that it does not seek civil penalties for violations based upon events that preceded the filing of the original complaint by more than five years.  Rather, it contends that the relief sought for these claims is injunctive relief and that injunctive relief is available for claims accruing more than five years prior to the filing of the complaint.  Plaintiff also asserts that dismissal of

claim nos. 221-223 is not appropriate since they are based upon events occurring in 2003.

It appears that Continental Carbon has mistakenly included claims 221-223 in the list of claims that are challenged as time-barred.  Indeed, Continental Carbon has acknowledged the error in its reply brief.  *See*, footnote 10 on page 9 of Continental Carbon's reply brief.  The court finds that these claims are timely filed.  The court also finds that several challenged claims are timely filed since the five-year statute of limitations was tolled during the statutory 60-day notice period.  Public Interest Research Group of New Jersey, Inc. v. Powell Duffryn Terminals Inc., 913 F.2d 64, 75 (3d Cir. 1990), *cert. denied*, 498 U.S. 1109 (1991).  Thus, claims which accrued after February 7, 1999 are timely and not subject to dismissal.  As to the remaining claims accruing before February 7, 1999 challenged as time-barred, the court agrees with  PACE that while it may not seek civil penalties for those claims, it may seek injunctive relief and that the five-year statute of limitations set forth in section 2462 does not apply to those claims.  North Carolina Wildlife Federation v. Woodbury, 1989 WL 106517, *3-4 (E.D.N.C. Apr. 25, 1989) (section 2462 by its terms does not apply to plaintiffs' claim in citizen suit under Clean Water Act for injunctive relief).  Dismissal of these claims under Rule 12(b)(6) as time-barred is therefore not appropriate.

Conclusion

Based upon the foregoing, defendant, Continental Carbon Company's Motion to Dismiss Plaintiffs' First Amended Original Complaint, filed December 22, 2004 (docket entry no. 43), is **GRANTED in part** and **DENIED in part**.  Claim nos. 113-117, 293, 308, 312, 313, 314, 379-380, and 526 are **DISMISSED** pursuant to Rule

12(b)(1), Fed. R. Civ. P.  Claim nos. 1-112 and claim nos. 554-555 are **DISMISSED**

pursuant to Rule 12(b)(6), Fed. R. Civ. P.

DATED this 10th day of June, 2005.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

04-0438p014(pub).wpd